IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:03 CV 117

| | |
|---|---|
| RITA BUSTLE PHARR,<br><br>    Plaintiff,<br><br>v.<br><br>UNUMPROVIDENT CORPORATION and its Predecessors and Subsidiaries, including UNUM LIFE INSURANCE COMPANY OF AMERICA, UNUM CORPORATION, and FREIGHTLINER OF CLEVELAND, LLC and its Predecessors including FREIGHTLINER CORPORATION,<br><br>    Defendants. | **ORDER** |

    **THIS MATTER** is before the Court on the following motions and memoranda: (1) Plaintiff Rita Bustle Pharr's ("Plaintiff") Motion for Summary Judgment, and Appendix to Plaintiff's Motion for Summary Judgment, both filed on August 13, 2004, (file docs. 20, 21); (2) Response of Defendants Unum Life Insurance Company of America, Unumprovident Corporation, and Unum Corporation ("Unum Defendants") to Plaintiff's Motion for Summary Judgment, filed on August 30, 2004, (file doc. 27); (3) Brief of Defendants Freightliner of Cleveland, LLC, and Freightliner LLC ("Freightliner Defendants") in Opposition to Plaintiff's Motion for Summary Judgment, filed on August 30, 2004, (file doc. 28); (4) Motion for Summary Judgment of Freightliner Defendants, Brief in Support of Motion for Summary Judgment, and attached exhibits, all filed on August 13, 2004, (file docs. 25, 26); (5) Motion for Summary Judgment by Unum Defendants, Brief in Support of Motion for Summary Judgment, and Affidavit of Holly Skillin-Dearborn, all filed on August 16, 2004, (file docs. 22, 23, 24).

These Motions are now ripe for disposition by the Court.

Having carefully considered the arguments, the record, and the applicable authority, for the below-stated reasons the Court will **deny** Plaintiff's Motion for Summary Judgment, **grant** the Freightliner Defendants' Motion for Summary Judgment, and **grant** the Unum Defendants' Motion for Summary Judgment.

**I.     FACTUAL AND PROCEDURAL HISTORY**

**A.     Kenneth Pharr's Employment, Medical Leave, and Death**

Kenneth Pharr ("Mr. Pharr") is Plaintiff's deceased husband. (Pl.'s Mot. at 1.) After approximately seven years of employment with the Freightliner Defendants, on June 19, 2000, Mr. Pharr went on approved medical leave under the Family and Medical Leave Act of 1993 ("FMLA"). (Pl.'s Mot. at 4.) At that time, he was informed that his FMLA leave would expire on September 13, 2000. (Pl.'s Mot. at 4-5.) However, Mr. Pharr returned to work for one day on August 14, 2000, which extended his FMLA leave until September 15, 2000. (Pl.'s Mot. at 5.) Mr. Pharr died from massive head trauma in a single motor vehicle accident on September 17, 2000. (UPCL 00221.)[1]

**B.     Accidental Death and Dismemberment Policy**

During his leave of absence, Mr. Pharr was eligible for certain continued benefits, some of which he was entitled to under federal law, and some of which he was entitled to under the policies of the Freightliner Defendants. (Pl.'s Mot. at 5; Unum Resp. at 6.) The Medical and Dental/Vision Plans, as well as the Group Life Insurance Plans, continued throughout his entire

---

[1] Citations to a UPCL number are to the Administrative Record which Unum Life Insurance Company of America used to evaluate Plaintiff's claim. This Record has been submitted to the Court, at least in part, by all parties to this action.

2

period of FMLA leave. (Pl.'s App. at 17.) However, the Accidental Death and Dismemberment ("AD&D") coverage ended at the end of the month in which the final contribution was made. (Pl.'s App. at 17.) Under the Freightliner Defendants' short-term disability policy, an employee who is absent from work due to a prolonged illness or injury is "eligible for payment of regular straight time wages (100%) for up to fifty-three (53) calendar days of absence per calendar year." (Pl.'s App. at 16.) Under this short-term disability policy, the Freightliner Defendants continued to pay Mr. Pharr his regular salary through August 31, 2000, and as such, continued to pay his AD&D premiums through that same date, which were ultimately deducted from his paychecks. (Unum Defs.' Summ. J. Br. at 6; UPCL 00133.) However, when Mr. Pharr's short-term disability salary continuation ended in August of 2000, the Freightliner Defendants also ceased premium payments for the AD&D policy. (Unum's Summ. J. Br. at 6; UPCL 00133.) Thus, no AD&D premium payment was made for September of 2000, when Mr. Pharr suffered the fatal injury.

The language of the AD&D policy provides that an insured's coverage will end on the earliest of the next Premium Due Date after: "(1) the date the policy is cancelled; (2) the date the Insured is no longer in an eligible group; (3) the date the eligible group is no longer covered; (4) the last day of the period for which the Insured made any required contributions." (UPSP 10011-10012.)[2] "Eligible Persons" are defined as "active regular Employees," although there is no definition of "active regular Employees." (UPSP 10003.) The "Premium Due Date" is the "first day of each calendar month after the Policy Effective Date." (UPSP 10005.) The policy specifically provides that if Unum Life Insurance Company of America ("Unum Life") "approves

---

[2] Citations to a UPSP number are to the actual AD&D policy.

the claim, [Unum Life] will pay each Insured a benefit for a covered Loss which is the result of an Injury." (UPSP 10007.) It further provides that Unum Life "must be given the information which [it] need[s] to determine if a benefit is payable . . ." (UPSP 10011.)

    **C.    Denial of Coverage**

On January 10, 2001, Unum Life sent a letter to Plaintiff informing her that her claim under the AD&D policy had been denied. (Pl.'s App. at 5a-5b.) The letter gave the following reason for denial:

> Information I have received from Freightliner Corporation indicates that your husband's last day of work was August 14, 2000. Premium was last deducted from his pay check for premiums due in August 2000. The policy under which your husband was covered states that termination of the employee will end the earliest of the next premium due date after the last day of the period for which the Insured made a contribution. Whereas no deduction was made for the premium that was due on September 1, 2000, coverage was terminated. As a result, the policy was not in force at the time of Mr. Pharr's death on September 17, 2000, therefore no benefits are payable.

(Pl.'s App. at 5a.) Plaintiff appealed the finding, and she was later informed of the decision to affirm the denial by letter dated May 10, 2001. (Pl.'s Mot. at 6; Pl.'s App. at 7a.) This letter gave the following reasoning:

> [U]nder the stated terms of the Policy, Mr. Pharr ceased to be in an "eligible group" as of June 21, 2000 when he ceased to be an active regular employee. In turn, his coverage terminated on the "next premium due date", which was July 1, 2000 under the stated terms of the Policy.
>
> Even if Mr. Pharr's coverage could be deemed to have been reinstated on the one day that he returned to active employment, on August 14, 2000, he ceased being an active regular employee again the next day when he resumed medical/disability leave status. Therefore, he ceased to be in an "eligible group" on August 15,

4

> 2000, which in turn meant that his coverage terminated under the stated terms of the Policy on the next premium due date, which was September 1, 2000. In either regard, Mr. Pharr's coverage terminated under the Policy prior to his date of death.
>
> . . .
>
> The Policyholder further reported that since Mr. Pharr was not eligible for any further salary continuation after the date of August 31, 2000, that was the last day of the period for which Mr. Pharr made the required contributions, which was applied by the Policyholder to his coverage for August. As such, the Policyholder agreed that under the stated terms of the Policy, Mr. Pharr ceased to be eligible for the AD&D coverage as of September 1, 2000.
>
> . . .
>
> The Policyholder is responsible for maintaining the administrative information for their employees, to include additions to and terminations from the plan as well as administering the premium billing for their employees. If the Policyholder failed to notify Mr. Pharr that his AD&D coverage terminated you would need to address that matter with the Policyholder. The Policyholder acts on its own behalf or as the agent of their employees. Under no circumstances is the Policyholder deemed the agent of UNUM.

(Pl.'s App. at 7a-7d.) It is from this decision that Plaintiff appeals to this Court.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to

overcome summary judgment. *Id.* at 249-50. Moreover, when the movant supports its motion for summary judgment by affidavits, the adverse party may not rest upon the mere allegations or denials of their pleading, but the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980). Summary judgment is thus proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

### III. DISCUSSION

#### A. Claims Fiduciary

Before the Court can determine the ERISA standard of review to apply to the instant case, the Court must first assess whether Plaintiff sued the correct entities. The proper defendant to a lawsuit for ERISA benefits is the plan itself and any fiduciary. *McRae v. Rogosin Converters*, 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004) (citing *Gluth v. Wal-Mart Stores, Inc.*, No. 96-1307, 1997 WL 368625 at * 6 (4th Cir. July 3, 1997) (unpublished)). Under the requirements of ERISA, "[e]very employee benefit plan . . . shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Even if a plan does not explicitly designate a fiduciary, ERISA provides that a person is a fiduciary of a plan to the extent: (1) he exercises any

6

discretionary authority or control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (2) he provides investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or property or the plan, or has the authority or responsibility to do so; or (3) he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A).

> '[T]o the extent' in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition. The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary *with respect to the particular activity at issue*.

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) (emphasis added) (citing 29 C.F.R. § 2509.75-8, FR-16(1001); *Licensed Div. Dist. No. 1 MEBA/NMU v. Defries*, 943 F.2d 474, 477-78 (4th Cir. 1991); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir. 1990); *Local Union 2132, United Mine Workers of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1459-60 (5th Cir. 1986); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984)); *see also Canada Life Ins. Co. v. Lebowitz*, 185 F.3d 231, 236-37 (4th Cir. 1999) (stating "[u]nder ERISA, a fiduciary is 'anyone . . . who exercises discretionary control or authority over the policy's management, administration, or assets'") (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)).

In the instant case, the Freightliner Defendants were Mr. Pharr's employer, and his only relationship with Unum Life was through certain insurance policies, including the AD&D plan currently before the Court. The Freightliner Defendants assert that they have no discretionary

7

authority with respect to the *particular activity at issue* in this case, the determination of eligibility for benefits, and thus, under Fourth Circuit law that they are not fiduciaries. (Freightliner Defs.' Summ. J. Br. at 7-8.) The Unum Defendants agree that the Freightliner Defendants are not fiduciaries, and argue that Unum Life is the only proper defendant. (Unum Defs.' Resp. at 2-3.) Although Plaintiff does not respond to this argument, she does assert that the Freightliner Defendants are fiduciaries in her Complaint, and in her Motion for Summary Judgment cites to correspondence between Unum Life and the Freightliner Defendants in an attempt to show that the Freightliner Defendants were involved in the decision-making process. (Pl.'s Am. Compl. ¶¶ 10, 11; Pl.'s Mot. at 10.)

Specifically, the correspondence which Plaintiff cites to show the Freightliner Defendants' involvement is as follows:

> In an October 9, 2000 email from UnumProvident's account consultant to a Freightliner benefits department representative, the account consultant stated, "Unfortunately, this contract doesn't define active employee that we can fall back on to give us clear direction. . . . Based on the fact that we don't have a definition to support "Active Employee" we may be relying more on you folks to help us determine this." (App. 18) Despite this communication, the Freightliner benefits department representative sent a letter to Mrs. Pharr the following week stating, "It will be up to UNUM to determine whether or not Mr. Pharr was eligible under the AD&D Plan in September, 2000." (App. 20) Also, in a November 10, 2000 email from the same Freightliner benefits representative to UnumProvident, the benefits representative stated, "It is not clear to us whether or not Mr. Pharr would be eligible for coverage under the AD&D plan." (App. 19)

(Pl.'s Mot. at 10.) In addition, the November 10, 2000 email continues with the following explanation: "The last month a payroll deduction was taken for AD&D coverage was for August,

8

2000. Initially (based on payroll deduction), we felt that he was not eligible for AD&D." (Pl.'s App. at 19.)

This correspondence simply does not show that the Freightliner Defendants had any authority to make the decision as to whether Plaintiff's claim would be allowed or denied. On the contrary, it shows that they were actively deferring to Unum Life to make this decision. It is clear that the Freightliner Defendants' benefits department had to decide whether Mr. Pharr was still participating in the AD&D plan for purposes of payroll deductions. However, this is an administrative decision which must necessarily be made by any employer as employees change their status. They simply followed their guidelines, which were evidently provided to Mr. Pharr, (Pl.'s App. at 17), and ceased deductions for the plan on the same date that his short-term disability payroll continuation ended. Performance of such ministerial duties does not make the Freightliner Defendants fiduciaries. *See* 29 C.F.R. § 2509.75-8. Further, it is significant that the correspondence to Plaintiff regarding her husband's eligibility for the AD&D plan, especially the two denial letters, came from Unum Life, and not the Freightliner Defendants. Even more compelling is the fact cited by Plaintiff, that the Freightliner Defendants sent her a letter informing her that Unum Life would be making the determination of eligibility under the AD&D plan. (Pl.'s Mot. at 10.)

In light of the fact that all evidence in the record points to the conclusion that Unum Life is the fiduciary for the Plan, the Court concludes that the Freightliner Defendants are not properly named Defendants and are accordingly entitled to summary judgment. However, since Unum Life admits it is the fiduciary of the Plan and was responsible for denying Plaintiff's claim, Unum Life is a properly named Defendant and is not entitled to summary judgment on that

9

basis.[3]

Further, although not technically addressing the question of whether they are fiduciaries under the AD&D plan, Unumprovident Corporation and Unum Corporation both assert that they are not proper defendants because Plaintiff's Amended Complaint clarifies that all allegations are directed toward Unum Life. (Unum Defs.' Summ. J. Br. at 2.) In Plaintiff's Amended Complaint she does assert that any references to the Unum Defendants are directed at Unum Life and that Unum Life is the proper party of the three Unum Defendants. (Pl.'s Am. Compl. ¶¶ 1-5.) Although Plaintiff does not go as far as voluntarily dismissing the Complaint as to Unumprovident Corporation and Unum Corporation, she does effectively dismiss the allegations against them. Accordingly, this Court will grant summary judgment to Unumprovident Corporation and Unum Corporation on this basis.

### B. Scope of Judicial Review

Once the Court has identified the fiduciary, it must then determine the standard of judicial review applicable to decide whether the fiduciary erroneously denied the plaintiff's claim. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the United States Supreme Court held, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the plan grants the administrator or fiduciary discretionary authority, the Court applies a more limited standard, and

---

[3]The Court notes that even if the Freightliner Defendants, Unumprovident Corporation, and Unum Corporation were found to be fiduciaries, they would still be entitled to summary judgment for the reasons stated in Section D infra.

"reviews the decision to deny benefits for abuse of discretion." *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000) (citations omitted).[4]

When the Court is construing a benefit plan's language, "[n]o specific phrases or terms are required in a plan to preclude a *de novo* standard of review." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002). The Fourth Circuit held that discretionary authority by implication will be recognized, "if the terms of a plan indicate a clear intention to delegate final authority to determine eligibility to the plan administrator." *Feder*, 228 F.3d at 523. The Fourth Circuit has also held that:

> The plan's intention to confer discretion on the plan administrator or fiduciary, however, must be clear. If a plan does not clearly grant discretion, the standard of review is *de novo*. Any ambiguity in an ERISA plan "is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured."

*Gallagher*, 305 F.3d at 268-69 (citations omitted).

Applying these holdings to the present case, the relevant language in the benefit plan is, "[i]f we approve the claim," Unum Life will pay benefits as detailed by the plan. (UPSP 10007-09.) Unum Life contends that the sole phrase, "[i]f we approve the claim," conferred to it discretionary authority, and therefore, the standard of review for the case should be the abuse of discretion standard. Unum Life points to no other language in the plan that might confer discretionary authority, and upon review of the plan, the Court finds no such language.

---

[4] The Court notes that, even if discretionary authority is found in the langauge of the benefit plan, if, as in this case, the administrator of the plan is also the insurer, and therefore stands to profit from denying benefit claims, the Court applies a modified abuse of discretion standard, where the conflict of interest "must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Bruch*, 489 U.S. at 115 (citations omitted).

Therefore, the Court will decide whether the phrase, "[i]f we approve the claim," is sufficient to grant Unum Life discretionary authority.

The plan defines that "we" refers to Unum Life, the insurer and plan administrator. (UPSP 10003.) Therefore, given its common meaning, the phrase, "[i]f we approve the claim," indicates that Unum Life will make a decision on whether to approve or deny a claim for benefits. Thus, the phrase suggests Unum Life must have some degree of authority to make such a decision. Yet, the phrase does not demonstrate "a *clear* intention to delegate *final* authority to determine eligibility." *Feder*, 228 F.3d at 523 (emphasis added); *see Gallagher*, 305 F.3d at 268-69.

The Fourth Circuit has recognized that discretionary authority may be implied by a benefit plan's language. *Feder*, 228 F.3d at 523. However, the language relied upon by Unum Life is significantly less "clear" and "final" than language in similar cases that was held sufficient to grant implied discretionary authority. For example, neither the phrase nor the plan in this case clearly determines who or what entity has the authority to decide disputed claims or claims that might be appealed after an initial denial. *See, e.g., Rego v. Westvaco Corp.*, 319 F.3d 140, 147 (4th Cir. 2003) (holding that language in benefit plan was sufficient to confer discretionary authority that "instructs the administrator to 'adopt such procedures and rules as he deems necessary or advisable to administer the Plan,' . . . [a]nd . . . provides that [the administrator] is responsible for both the 'determination of participants' eligibility to receive benefits' *and* the 'determination of appeals of denied claims'") (emphasis added); *United McGill Corp. v. Stinnett*, 154 F.3d 168, 171 (4th Cir. 1998) (holding that discretionary authority was conferred where "the Plan grants [the administrator] discretionary authority to 'construe the terms of the

12

Plan and resolve any disputes which may arise with regard to the rights of any persons under the terms of the Plan'"). Unum Life's language might have been sufficiently discretionary had it simply included the qualifying word "only" before "[i]f we approve the claim," as suggested in *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (affirming the district court and the parties' agreement that discretionary authority existed where plan stated that "'[the administrator] may adopt reasonable policies, procedures, rules and interpretations to promote the orderly and efficient administration of this agreement,'" and that "benefits will be paid 'only if CapitalCare determines' that certain conditions are met") (emphasis omitted).

Furthermore, Unum Life's plan does not include language indicating its ability "to construe the terms of the plan." *Bruch*, 489 U.S. at 115. Inclusion of such language would have strengthened Unum Life's claim of discretionary authority in the absence of "clear" and "final" language granting authority to determine benefit eligibility. *See Rego*, 319 F.3d at 147; *Stinnett*, 154 F.3d at 171; *Bernstein*, 70 F.3d 783, 788.

Finally, Unum Life or its subsidiaries have drafted language in other benefit plans that has been held sufficient to confer discretionary authority and that is far more explicit than the language it relies upon here. *See, e.g., Williams v. UNUM Life Ins. Co.*, 250 F.Supp.2d 641, 646 (E.D.Va. 2003) (holding that language in benefit plan was sufficient to confer discretionary authority where it provided that, "[w]hen making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy") ; *Sanders v. Unum Life Ins. Co.*, 346 F.Supp.2d 955, 956 (N.D. Ill. 2004) (stating, "[i]n a paragraph entitled, 'Discretionary Authority,' the plan explicitly reserves discretionary authority for Unum," and quoting language identical to that in *Williams*,

13

250 F.Supp.2d at 646). Unum Life had the knowledge and the ability to draft adequately discretionary language into its plan. It simply failed to do so in this case.

Therefore, absent language in the plan that more clearly grants Unum Life final discretionary authority to determine benefit eligibility or construe the terms of the plan, the phrase, "[i]f we approve the claim," is insufficient to merit abuse of discretion review. *See Neumann v. Prudential Ins. Co.*, 367 F.Supp.2d 969, 974 (E.D.Va. 2005) (holding that the sole phrase, "Prudential determines," was insufficient to confer discretionary authority to plan administrator for reasons similar to those discussed above). The Court will proceed to review the case *de novo*.

### C. Evidence to be Considered by the Court

Next, the Court must decide what evidence it may consider in determining whether Plaintiff's claim should have been accepted or denied. There is no question that the Court can consider materials which were before Unum Life when it made the decision to deny Plaintiff's claim. *See Abromitis v. Continental Casualty Co./CNA Ins. Cos.*, 261 F. Supp. 2d 388, 390 (4th Cir. 2003). As such, the Court will consider the administrative record, including the Policy itself. Further, because this Court is conducting a *de novo* review, additional documentation provided by Plaintiff will also be considered. This information includes documentation such as earnings statements of Mr. Pharr, and the leave policy and employment status chart as provided by Freightliner to its employees.

### D. Denial of Plaintiff's Claim

After a thorough review of all the evidence before the Court, the ultimate conclusion

must be that Mr. Pharr was no longer eligible under the AD&D plan at the time of his death. The Court must reach this conclusion for two reasons. First, there is the policy of the Freightliner Defendants as to eligible employees. As stated in the Freightliner Defendants' short-term disability policy, an employee who is absent from work due to a prolonged illness or injury is "eligible for payment of regular straight time wages (100%) for up to fifty-three (53) calendar days of absence per calendar year." (Pl.'s App. at 16.) This document was signed by Mr. Pharr on August 15, 2000. (Pl.'s App. at 16.) When looking at this document in combination with the document entitled, "If Your Employment Status Changes, Part 2," it is apparent that when regular salary payments ceased, so would eligibility for the AD&D plan. (Pl.'s App. at 17.) In the chart in this document, the block for the AD&D plan under the FMLA section reads, "Coverage ends at month end of final contribution. no option to self-pay premium." (Pl.'s App. at 17.) Mr. Pharr's salary continuation under the short-term disability policy ended on August 31, 2000. (UPCL 00133.) Accordingly, reading these documents together, an employee is on notice that when his regular salary payments ended, so would his eligibility under the AD&D policy.

Plaintiff also argues that although the Freightliner Defendants paid the premiums to Unum Life at the beginning of each month, the premiums were not deducted from an employee's salary until the third or fourth week of the month. (Pl.'s Mot. at 4.) This argument is not persuasive in light of the fact that coverage ends when regular salary payments end. If there is no option to self-pay the premium, then there can be no continuation of this benefit past the last date of regular salary continuation. On this same note, Plaintiff argues that the lump sum payment she received for her husband's unused vacation time was a continuation of salary, and, thus, the

September 2000 premium payment should have been deducted from that payment. This argument is also unpersuasive in light of the policy to allow the AD&D eligibility to continue only as long as regular salary payments are being made. Benefits departments must work with the facts before them at the time they make a decision. They have set policies and the only fair and equitable way to operate is to apply the policies uniformly to all employees. The Freightliner Benefits Department only knew that Mr. Pharr's regular salary payments under the benefits plan would end at the end of August. With this knowledge, it followed that AD&D payments could no longer be deducted from his regular salary payments and with no option to self-pay, the AD&D coverage would end in August, and no payment would be made on Mr. Pharr's behalf in September. There was no reason for the Benefits Department to take action contrary to its own policies and continue the AD&D payments for Mr. Pharr in September through a deduction from unused vacation time salary.

Second, there is the language of the policy itself, "Eligible Persons" are defined as "active regular Employees." (UPSP 10003.) As Plaintiff cited in her Motion, the Fourth Circuit has held that when reviewing an ERISA benefits plan, the "primary effort should be to ascertain the intent of the parties." *Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 544 (4th Cir. 1992). Further, "[a]lleged ambiguities should be reconciled, if possible, by giving language its ordinary meaning and, if necessary, by admitting relevant, extrinsic evidence. If ambiguities remain, the Plan should be construed against the drafter." *Id.*

The issue in this action is over the interpretation of the definition of an eligible person, which is an active regular employee. Applying the standard articulated in *Glocker*, there can be no question that in not defining the phrase "active regular employee," Unum Life created an

16

ambiguity in its contract, especially considering that this action is before this Court in large part over an argument as to what that phrase means. This Court must reconcile this ambiguity by "giving language its ordinary meaning and, if necessary, by admitting relevant, extrinsic evidence." *Glocker*, 974 F.2d at 544.

This analysis will begin by giving the phrase "active regular employee" its ordinary meaning. There is no dispute that Mr. Pharr was a "regular employee," who had, in fact, been employed by the Freightliner Defendants for around seven years. Thus, the dispute centers around the definition of "active." "Active," in ordinary use, would refer to an employee who is engaged in the daily tasks of his employer. However, this definition must be considered in light of the extrinsic evidence which has been provided to the Court. Based on the facts of this case, "active" does not exclude those who are on leave, because Mr. Pharr was allowed to continue as eligible under the AD&D plan for the duration of his short-term disability salary continuation. It was not until he was no longer eligible for regular salary payments that he became ineligible for the AD&D plan.

Thus, the most logical definition of active, in light of the entire record and the actions of and information known to Mr. Pharr, the Freightliner Benefits Department, and Unum Life, is that an employee is considered "active" for the duration of time for which he is receiving regular salary payments. It would be impractical and impossible for an employer to keep track of which days a person was eligible for a particular policy based on whether that person was at work that day, or at home with a sick child, or out on an extended leave. However, it is logical that an active employee would be one who is being treated as an active employee for purposes of payroll, whether it be because that person is at work each day, or because of the benefit of a

short-term disability plan. And, it is the actions and written policies of the Freightliner Defendants, who did not have a stake in whether Plaintiff received the AD&D payment, which make it clear that an active regular employee is one who is being treated as such for purposes of payroll.[5]

Therefore, since Mr. Pharr was not an "active regular employee" as of the time of his demise, he was not covered by the AD&D Plan, and the claim for benefits under that plan must be denied.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff Rita Bustle Pharr's Motion for Summary Judgment is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Freightliner of Cleveland, LLC, and Freightliner LLC's Motion for Summary Judgment is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Unum Life Insurance Company of America, Unumprovident Corporation, and Unum Corporation's Motion for Summary Judgment is hereby **GRANTED**.

The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

---

[5] The Court also notes that a lump sum payment of unused vacation days at the end of one's employment is distinguishable from a regular salary payment.

Signed: August 2, 2006

Richard L. Voorhees
United States District Judge